# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## Appellate Docket Number 22-1700

### GLADIS GARCIA,

Appellant,

v.

### MOUNTAIN CREEK RIDING STABLE, INC.,

Appellee

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA NO. 3:17-CV-01417-RDM

## BRIEF OF APPELLEE, MOUNTAIN CREEK RIDING STABLE, INC.

KARYN DOBROSKEY RIENZI, ESQUIRE
POST & SCHELL, P.C.
FOUR PENN CENTER, 14TH FLOOR
1600 JOHN F. KENNEDY BOULEVARD
PHILADELPHIA, PA  19103
215-587-1175 (T)/ 215-320-4778 (F)
COUNSEL FOR APPELLEE,
MOUNTAIN CREEK RIDING STABLE, INC.

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................ iii

I. COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .................................................................................1

II. COUNTER-STATEMENT OF THE CASE ...............................................1

    A. PROCEDURAL HISTORY AND RULINGS PRESENTED FOR REVIEW............................................1

    B. RELEVANT FACTS.............................................................3

III. SUMMARY OF THE ARGUMENT ..............................................6

IV. ARGUMENT.......................................................................7

    A. SCOPE AND STANDARD OF APPELLATE REVIEW OF AN ORDER GRANTING SUMMARY JUDGMENT ................................................................7

    B. THE TRIAL COURT CORRECTLY GRANTED SUMMARY JUDGMENT BECAUSE THE RECORD IS DEVOID OF EVIDENCE THAT DEFENDANT WAS NEGLIGENT.................................................8

    C. IN THE ALTERNATIVE, SUMMARY JUDGMENT IS WARRANTED BECAUSE PLAINTIFF ASSUMED THE RISK OF ANY HARM ......................................14

    D. IN THE ALTERNATIVE, DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT, SINCE PLAINTIFF WAIVED ANY POTENTIAL CLAIMS AGAINST DEFENDANT................................................16

V. CONCLUSION .......................................................................23

CERTIFICATION OF BAR MEMBERSHIP

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

i

# <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

**CERTIFICATION OF SERVICE**

**CERTIFICATION OF IDENTICAL BRIEFS**

**CERTIFICATION OF VIRUS CHECK**

<u>**TABLE OF AUTHORITIES**</u>

<u>**CASES**</u>                                                 <u>**PAGE(S)**</u>

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)............................8

<u>Andrews v. Smith</u>, 188 A. 146 (Pa. 1936)....................................9

<u>Arce v. U-Pull-It Auto Parts, Inc.</u>, Civil Action No. 06-5593, 2008
    U.S. Dist. LEXIS 10202 (E.D. Pa. Feb. 13, 2008)......................20, 21

<u>Barshay v. American Ice Co.</u>, 84 Pa. Super. 539 (1925)........................10

<u>Blunt v. Lower Merion Sch. Dist.</u>, 767 F.3d 247 (3d Cir. 2014) ...........................8

<u>Bullman v. Giuntoli</u>, 761 A.2d 566 (Pa. Super. 2000) ............................14

<u>Burwell v. Crist</u>, 373 F.2d 78 (3d Cir. 1967)......................................10, 11

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) ........................8

<u>Cohen v. Rodenbaugh</u>, 162 F. Supp. 748 (E.D. Pa. 1957) .................................9, 11

<u>Croft v. Malli</u>, 105 A.2d 372 (Pa. 1954).......................................22

<u>DeShields v. Mt. Laurel Resort & Spa</u>, No. 3:09cv2125, 2011 U.S.
    Dist. LEXIS 54344 (M.D. Pa. May 20, 2011).........................9, 11, 12

<u>Freund v. Hyman</u>, 103 A.2d 658 (Pa. 1954)............................................8

<u>Germantown Sav. Bank v. Talacki</u>, 657 A.2d 1285 (Pa. Super. 1995)..................20

<u>Hinkal v. Pardoe</u>, 133 A.3d 738 (Pa. Super. 2016), <u>appeal denied</u>, 141
    A.3d 481 (Pa. 2016).........................................................20

<u>Kaucher v. County of Bucks</u>, 455 F.3d 418 (3d Cir. 2006)................................8, 13

<u>Kinley v. Bierly</u>, 876 A.2d 419 (Pa. Super. 2005).....................................9, 10

<u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294 (3d Cir.
    2012) .......................................................................7

<u>Morales v. Sun Constructors, Inc.</u>, 541 F.3d 218 (3d. Cir. 2008) ..........................21

<u>Ruehl v. Viacom, Inc.</u>, 500 F.3d 375 (3d Cir. 2007).................................7

## TABLE OF AUTHORITIES (CONTINUED)

**CASES**                                                                    **PAGE(S)**

Schillachi v. Flying Dutchman Motorcycle Club, 751 F. Supp. 1169
(E.D. Pa. 1990)............................................................................17, 18

Scott v. Purcell, 415 A.2d 56 (Pa. 1980) .................................................22

Seaton v. East Windsor Speedway, Inc., 582 A.2d 1380 (Pa. Super.
1990) ...........................................................................................18

Simmons v. Parkette National Gymnastic Ctr., 670 F. Supp. 140 (E.D.
Pa. 1987) .....................................................................................16

Staub v. Toy Factory, Inc., 749 A.2d 522 (Pa. Super. 2000)....................14

Valeo v. Pocono Int'l Raceway, Inc., 500 A.2d 492 (Pa. Super. 1985)......16, 17, 20

Washburn v. N. Health Facilities, Inc., 121 A.3d 1008 (Pa. Super.
2015) ...........................................................................................21, 22

Wisler v. Manor Care of Lancaster PA, LLC, 124 A.3d 317 (Pa.
Super. 2015)................................................................................22

Zimmer v. Mitchell, 385 A.2d 437 (Pa. Super. 1978)............................17

**STATUTES**

4 Pa. Stat. Ann. § 602(a) .......................................................................14

4 Pa. Stat. Ann. § 602(b)(6) ...................................................................14

4 Pa. Stat. Ann. § 603............................................................................15, 16

**OTHER AUTHORITIES**

Restatement of Agency, § 22, comment (b) ............................................23

Restatement (Second) of Agency § 1.....................................................22

Restatement (Second) of Torts § 509.....................................................10

Restatement (Second) of Torts § 518......................................................9, 10, 12

## I.    COUNTER-STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

### A.    DID THE DISTRICT COURT CORRECTLY GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANT, SINCE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND PLAINTIFF CANNOT PROVE HER NEGLIGENCE CLAIMS AGAINST DEFENDANT AS A MATTER OF LAW?

**Suggested answer in the affirmative.**

### B.    IN THE ALTERNATIVE, IS DEFENDANT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW, SINCE PLAINTIFF ASSUMED THE RISK AND SINCE DEFENDANT IS IMMUNE FROM SUIT UNDER THE EQUINE ACTIVITY LAW?

**Suggested answer in the affirmative.**

### C.    IN THE FURTHER ALTERNATIVE, IS DEFENDANT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW, SINCE PLAINTIFF WAIVED ALL CLAIMS OF NEGLIGENCE AGAINST DEFENDANT?

**Suggested answer in the affirmative.**

## II.    COUNTER-STATEMENT OF THE CASE

### A.    PROCEDURAL HISTORY AND RULINGS PRESENTED FOR REVIEW

Appellant, Gladis Garcia (hereinafter "Plaintiff"), initiated the underlying negligence action by filing a Complaint against Appellee, Mountain Creek Riding Stables, Inc. (hereinafter "Defendant"), on August 10, 2017 in the District Court for the Middle District of Pennsylvania.  Appx. 7-8, Appx. 12.  Defendant filed its

Answer to the Complaint with Affirmative Defenses.[1]  Appx. 8; S.A. 1.  Plaintiff filed an Answer to Defendant's Affirmative Defenses. Appx. 8; S.A. 7.

Following the close of discovery, on October 12, 2020, Defendant filed its Motion for Summary Judgment with a supportive Brief.[2]  Appx. 10; S.A. 10. Plaintiff filed her Response and Brief in opposition to the Motion.  Appx. 10; S.A. 59, 98.

The Motion for Summary Judgment was referred to Magistrate Judge Martin C. Carlson for the preparation of a Report and Recommendation on November 20, 2020.  Appx. 10.  Magistrate Judge Carlson issued his Report and Recommendation that the Defendant's Motion for Summary Judgment be granted on June 15, 2021.  Appx. 10; S.A. 102.  Plaintiff filed Objections to the Report and Recommendations, which Defendant opposed.  Appx. 10-11.

By Order dated and entered on April 12, 2022, the Honorable Robert D. Mariani adopted the Magistrate's Report and Recommendations and granted summary judgment in favor of Defendant.  Appx. 1, 11.  Also on April 12, 2022, Judgment was entered in favor of Defendant and against Plaintiff.  Appx. 4, 11.

---

[1] Initially, an Entry of Default was entered against Defendant. Appx. 8.  The Default was withdrawn by Order entered on January 2, 2018. Appx. 8.

[2] Defendant's initial Motion for Summary Judgment was denied without prejudice by Order entered September 28, 2020. Appx. 10. The Order granted Employer leave to file a renewed Motion for Summary Judgment.  Appx. 10.

Plaintiff filed a timely appeal to this Court.  Appx. 5, 11.  On October 11, 2022, Plaintiff filed her Brief in support of her appeal.  Defendant now files this Brief in opposition to Plaintiff's request for appellate relief.

## B.    <u>RELEVANT FACTS</u>

Plaintiff claims that she was injured on August 29, 2015 when she was thrown from a horse she was riding on Defendant's property.   Appx. 13 (Complaint, ¶ 5).   When Plaintiff and her family arrived at Defendant's stable on that date, they were advised that Plaintiff could not ride a horse unless she changed out of the sandals she was wearing. S.A. 32 (Transcript of Plaintiff's Deposition Testimony, p. 9).  Plaintiff and her husband did not speak English well, and relied upon their then twelve-year-old son, J.C., to translate for them when necessary. S.A. 103 (Report and Recommendations of the Magistrate Judge).

While Plaintiff was changing her shoes, her husband signed a Waiver on her behalf.  S.A. 39 (Waiver).  Plaintiff's husband testified that he signed for his wife and that he had the permission and authority to sign on her behalf. S.A. 44 (Transcript of Benjamin Garcia's Deposition Testimony, p. 9).

The Waiver provides, in pertinent part, as follows:

> Gladis Garcia, on behalf of myself, my heirs and assigns, release and forever discharge Mountain Creek Riding Stable, Inc. D/B/A The Ranch at Pocono Manor… from any and all claims for injuries or damages (including, but not limited to, any and all equipment, artificial and/or natural conditions, and/or conditions upon these

> premises), and that result or are caused in any manner whatsoever including, but limited to the negligence of each releasee.

S.A. 39 (Waiver). The Waiver goes on to identify specific issues related to horseback riding:

> I acknowledge, appreciate and understand that horseback riding is a hazardous activity; that injuries are a common and ordinary occurrence of participation in this activity… I understand that these risks include but are not limited to the following:
>
> a.     Horses regardless of temperament or training are unpredictable animals. This may result in unexpected reactions to wild animals, other horses, people, machinery, noises, or movement, based upon instinct or fright.
>
> b.     Even well trained horses may at times fail to respond to a rider's commands, and the degree of responsiveness may vary with the strength, skill, and experience of the individual rider.
>
> …
>
> I assume the full responsibility for each of these risks including, but not limited to, the negligence of each releasee.

Id.

In addition to the Waiver, numerous signs were placed throughout Defendant's property advising patrons, like Plaintiff, that riders "assume the risk of equine activities pursuant to Pennsylvania law." S.A. 49-51 (Photographs). The signage was up and in place at the time that Plaintiff and her family came to

Defendant's property. Id.; S.A. 60 (Plaintiff's Answer to the Motion for Summary Judgment, at ¶¶ 6-7).

According to Plaintiff and her family, there was little instruction concerning the logistics of the trail ride. J.C. testified that the stable staff lined up the horses and positioned Plaintiff's family with their respective horses. S.A. 82 ( Transcript of J.C.'s Deposition Testimony, p. 13). Once they had mounted the horses, J.C. recalled the staff giving some instructions: "just said like, okay, this is to hold on, the thing in the middle, but I never remember them telling me about the reins..." Id., at p. 14.

Plaintiff testified that a woman "showed [her] how to climb up the horse and helped [her] in putting the helmet on."  S.A. 75 (Transcript of Plaintiff's Deposition Testimony, p. 24).  She recalled that she received instructions from her husband, who had some experience riding horses, and that she and Mr. Garcia "weren't really paying that much attention to the instructions that the people from the stable were giving because neither [she] nor [her] husband understand or speak English." S.A. 73-74 (Transcript of Plaintiff's Deposition Testimony, pp. 16-17). However, she also testified that, during the ride, she "had to pull the rope to stop the horse," which is what her husband told her to do. S.A. 35-36 (Transcript of Plaintiff's Deposition Testimony, pp. 24-25).

At some point during the trail ride, Plaintiff's horse suddenly went off of the trail and proceeded to run.    S.A. 36 (Transcript of Plaintiff's Deposition Testimony, pp. 25-26).    According to Plaintiff, the horse "went up on two legs;" she tried to gain control of the horse but could not.  Id.  Ultimately, Plaintiff fell off the horse.  Id.    The record is devoid of evidence that, prior to the incident, the horse at issue had any dangerous propensities.

## III.    SUMMARY OF THE ARGUMENT

The District Court correctly determined that Plaintiff failed to establish negligence against Defendant and, as a result, Defendant was entitled to summary judgment as a matter of law.  Plaintiff was required to, and could not, establish that the horse at issue had dangerous propensities prior to the incident at issue.  Here, the record lacks any such evidence.  As a result, Plaintiff could not meet her burden of proof with regard to her negligence claim against Defendant where the evidence established only that, during her ride, the horse went off of the trail and began to run, causing her to fall off of the horse.

As the Magistrate Judge aptly explained,

> "It cannot be said that a person would not be thrown from a horse in the absence of someone's negligence. It is an inherent danger of riding a horse that such an incident may occur no matter how many precautions are taken." In the instant case, … the plaintiff's allegations amount

>                    to a theory that because the accident happened, the
>                    defendant must have been negligent.

S.A. 120-121 (internal citations omitted).  Accordingly, the District Court did not

err in adopting the Magistrate's Recommendations and granting summary

judgment in favor of Defendant.

In the alternative, this Court may affirm an Order of the District Court for

any reasons supported by the record.  Accordingly, Defendant submits that

summary judgment also is warranted since the record and the law establish that

Plaintiff assumed the risk of any harm and that she waived any claims of

negligence against Defendant.  For each and/or all of these reasons, the District

Court's Order should be affirmed.


## IV.    **ARGUMENT**

### A.    **SCOPE AND STANDARD OF APPELLATE REVIEW OF AN ORDER GRANTING SUMMARY JUDGMENT**

This Court reviews the District Court's grant of summary judgment *de novo*.

Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 300 (3d Cir. 2012).

Summary judgment is appropriate where there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.

Ruehl v. Viacom, Inc., 500 F.3d 375, 380 n.6 (3d Cir. 2007) (citations omitted).

A dispute "is genuine only if there is a sufficient evidentiary basis on which

a reasonable jury could find for the non-moving party, and a factual dispute is

material only if it might affect the outcome of the suit under governing law."
<u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) <u>citing</u> <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The moving party is entitled to
judgment as a matter of law if the non-moving party fails to make "a sufficient
showing on an essential element of her case with respect to which she has the
burden of proof." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Because
this Court's review is plenary, it "may affirm the District Court on any grounds
supported by the record, even if the court did not rely on those grounds." <u>Blunt v.</u>
<u>Lower Merion Sch. Dist.</u>, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotation
marks omitted).

### B. THE TRIAL COURT CORRECTLY GRANTED SUMMARY JUDGMENT BECAUSE THE RECORD IS DEVOID OF EVIDENCE THAT DEFENDANT WAS NEGLIGENT

It is well-settled that "'the mere happening of an accident is no evidence of
negligence...  The plaintiff has the twofold burden of proving that the defendant
was negligent and that his negligence was the proximate cause of her accident….'
A jury is not permitted, however, to speculate or guess; conjecture, guess or
suspicion do not amount to proof." <u>Freund v. Hyman</u>, 103 A.2d 658, 659 (Pa.
1954) (citations omitted).  It is further well-settled that "the mere occurrence of an
injury as a result of riding a horse does not state a claim sounding in negligence."
S.A. 117 (Report and Recommendations of the Magistrate Judge).  <u>See</u> <u>also</u>

8

DeShields v. Mt. Laurel Resort & Spa, No. 3:09cv2125, 2011 U.S. Dist. LEXIS 54344 (M.D. Pa. May 20, 2011) (holding that evidence that a rider was thrown from a horse, alone, is insufficient to create a question of fact on the issue of negligence).

Under Pennsylvania law, "a person is liable for injuries resulting from the actions of a domestic animal[3] he owns only if he is guilty of negligence with respect to his control of the animal." Cohen v. Rodenbaugh, 162 F. Supp. 748, 748 (E.D. Pa. 1957) citing Andrews v. Smith, 188 A. 146 (Pa. 1936). In this regard, Pennsylvania follows the Restatement of Torts (Second), which limits the scope of tort liability as to an animal owner for the actions of domesticated animals and which states, in relevant part, as follows:

> § 518 Liability for Harm Done by Domestic Animals That Are Not Abnormally Dangerous.
>
> Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,
>
> (a) he intentionally causes the animal to do the harm, or
>
> (b) he is negligent in failing to prevent the harm.

---

[3] "Animals such as horses, oxen and dogs are not beasts that are *ferae natura, i.e.*, wild beasts, but are classed as *mansuetae natura, i.e.*, tamed and domesticated animals, and their owners are not responsible for any vicious acts of theirs unless the owners have knowledge that they are likely to break away from their normal domestic nature and become vicious." Kinley v. Bierly, 876 A.2d 419, 422 (Pa. Super. 2005) quoting Andrews v. Smith, 188 A. 146, 148 (Pa. 1936).

Restatement (Second) of Torts § 518.  Restatement (Second) of Torts § 509 further

states:

> § 509 Harm Done by Abnormally Dangerous Domestic
> Animals
>
> (1) A possessor of a domestic animal that he knows or
> has reason to know has dangerous propensities abnormal
> to its class, is subject to liability for harm done by the
> animal to another, although he has exercised the utmost
> care to prevent it from doing the harm.
>
> (2) This liability is limited to harm that results from the
> abnormally dangerous propensity of which the possessor
> knows or has reason to know.

Restatement (Second) of Torts § 509.

Accordingly, there must be evidence that the owner was aware of an

animal's vicious tendencies before the owner of a horse is subject to liability for

harm caused by that horse.  See Kinley v. Bierly, 876 A.2d 419, 422 (Pa. Super.

2005) citing Barshay v. American Ice Co., 84 Pa. Super. 539 (1925).  Here, there is

no such evidence.  As a result, Defendant was properly granted summary judgment

as a matter of law.

In Burwell v. Crist, this Court reversed a District Court's Order that had

found insufficient evidence setting forth a *prima facie* negligence case against the

owner of the horse.  373 F.2d 78 (3d Cir. 1967).  In that case, there was testimony

that, prior to the incident at issue, the defendant was aware that the involved horse

had previously "lashed out" and kicked other horses and that the involved horse

generally would kick whenever another horse "sniffed at her, rubbed her, or made an approach as if to bite her" prior to the incident at issue. Id., at 81. This Court held that this testimony was sufficient to allow the claim of negligence to proceed against the defendant, where the horse at issue subsequently kicked a child, resulting in the child's death. Id.

In contrast, in Cohen v. Rodenbaugh, 162 F. Supp. 748, 748 (E.D. Pa. 1957), the District Court dismissed the action, finding that the plaintiff failed to establish negligence on the part of the defendant where the record was devoid of evidence that the horse had previously exhibited any vicious propensities. Id., at 748-49. Likewise, in DeShields v. Mt. Laurel Resort & Spa, No. 3:09cv2125, 2011 U.S. Dist. LEXIS 54344 (M.D. Pa. May 20, 2011), the District Court held that the plaintiff failed to demonstrate a *prima facie* case of negligence where the plaintiff had alleged that the defendant was negligent in allowing her to ride a horse that had been stung by bees on a trail located near a bees' nest during her ride, causing her to fall from the horse. Id., at *10-*11.

The District Court, in DeShields, explained as follows:

> In the instant case, the evidence presented merely consists of the following: Plaintiff rode the horse, it started to gallop and she fell off. No evidence suggests that the defendants engaged in any conduct that caused the horse to begin galloping or that the horse was generally an unsafe horse for a novice rider or that the trail was maintained in a negligent manner. Without such evidence, plaintiff's negligence claim cannot proceed.

Id., at *13.

The instant case is remarkably similar to DeShields.  Here Plaintiff claims that she was injured "when she was thrown off of the horse she was riding." Appx. 13 (Complaint, ¶ 5).  When pressed on the issue at her deposition, Plaintiff testified as follows:

> The last thing I remember is that we were on the trail and all of a sudden, the horse tried to get off the trail and proceeded to run and that's the last thing that I remember.

S.A. 36 (Transcript of Plaintiff's Deposition Testimony, pp. 25-26).  Plaintiff's family apparently, told her that all of their horses "acted up" but that her horse acted up "the worst and that is why [she] fell."  S.A. 36 (Id., p. 28).

Even if her family's assessment of the behavior of their horses on the date of the incident is accepted as true for the purposes of summary judgment, it is insufficient to establish negligence against Defendant.  Plaintiff's claim arises from her allegation that her horse started to gallop and she fell off.  There is no evidence that the horse had any dangerous propensities prior to the incident at issue.  This is exactly the situation that the DeShields court found deficient as a matter of law.

In her Brief, Plaintiff fails to cite to any relevant law to support her arguments other than the Restatement (Second) of Torts § 518.  Instead, she alleges that there are issues of fact that must be submitted to the jury.  Specifically, she claims that there are issues of fact as to whether (1) the guides failed to properly

supervise and/or monitor her; (2) the instructions provided by the Defendant were "improper, careless, and sub-standard;" and (3) the positioning of the guides during the ride was "improper, careless, and sub-standard."

Plaintiff, however, fails to recognize that "a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). Significantly, none of these alleged "issues of fact" even involve, let alone establish, the threshold issue in this case – whether the horse at issue had previously exhibited any dangerous or vicious propensities. As a result, there is no *material* factual dispute in this case.

Furthermore, the District Court aptly explained, with respect to the issues Plaintiff raises, above, there was, in fact, no dispute:

> [W]hile Garcia contends that there is evidence showing that the defendants were negligent in failing to give proper instructions, Mrs. Garcia's own testimony belies this assertion. As we have noted, Mrs. Garcia stated that she and her husband did not pay attention to the instructions being given because they were being given in English, even though she stated that her son had been translating for her throughout the day. Moreover, Mrs. Garcia testified that she knew to pull on the reins to stop the horse because her husband told her how to stop the horse. Accordingly, we cannot conclude that this testimony amounts to evidence showing that the defendant was negligent when, to the contrary, it indicates that instructions were in fact given to the riders but were ignored by the plaintiff.

S.A. 120 (Report and Recommendations of the Magistrate Judge).

Since Plaintiff did not and cannot establish a claim of negligence against Defendant, the District Court properly held that her claim failed as a matter of law. The District Court's Order granting summary judgment in favor of Defendant should be affirmed.

### C. IN THE ALTERNATIVE, SUMMARY JUDGMENT IS WARRANTED BECAUSE PLAINTIFF ASSUMED THE RISK OF ANY HARM

In Pennsylvania, the doctrine of assumption of the risk acts as a complete bar to recovery. <u>Bullman v. Giuntoli</u>, 761 A.2d 566 (Pa. Super. 2000). Although the doctrine of assumption of the risk has been limited, when applicable, it remains a valid defense. <u>Staub v. Toy Factory, Inc.</u>, 749 A.2d 522, 526 (Pa. Super. 2000). In negligence actions, the question of whether a litigant has assumed a risk is a question of law as part of the court's duty analysis and is not a matter for jury determination. <u>Id</u>.

Pursuant to Pennsylvania's Equine Activity Law "negligence shall only be barred where the doctrine of knowing voluntary assumption of risk is proven with respect to damages due to injuries or death to an adult participant resulting from equine activities." 4 Pa. Stat. Ann. § 602(a). The term "equine activities" includes, in relevant part, "[r]ecreational rides or drives which involve riding or other activity involving the use of an equine." 4 Pa. Stat. Ann. § 602(b)(6).

Immunity under the Equine Activity Law is afforded to a defendant if "signing is conspicuously posted on the premises on a sign at least three feet by two feet, in two or more locations, which states the following: You assume the risk of equine activities pursuant to Pennsylvania law." 4 Pa. Stat. Ann. § 603.

Here, there is no dispute that Defendant had posted, at all relevant times, at least three signs that complied with the requirements of the Equine Activity Law. Specifically, a large blue and white sign was located on the door to Defendant's office.  S.A. 49-51 (Photographs).  A second large blue and white sign was prominently placed on the wall behind the desk where patrons checked in.  Id.  A third large blue and white sign was placed adjacent to the mounting area on the exterior wall of a barn.  Id.  Each of these signs clearly and unambiguously communicated to patrons, like Plaintiff, that riders "assume the risk of equine activities pursuant to Pennsylvania law." Id.

There is no dispute that Plaintiff was engaged in "equine activities" at all relevant times.  Specifically, she testified that she was thrown from the horse while riding on a trail with her family on vacation.

It is anticipated that Plaintiff will argue that she did not assume the risk, since the signs were in English and not in Spanish, and since she spoke and read only limited English.  However, such an argument is not supported by the plain language of the law.  In this regard, the Equine Activity Law does not require that

signs are posted in multiple languages.  It requires only that specific language is posted in English.  There is no statutory or common law duty to post multi-lingual signs.

The Equine Activity Law requires the conspicuous posting of signage in two or more locations.  4 Pa. Stat. Ann. § 603.  Here, it is undisputed that Defendant complied with these requirements.  Accordingly, Defendant is immune from liability under the Equine Activity Law.  Summary Judgment in favor of Defendant is warranted under this alternative basis.

### D.    IN THE ALTERNATIVE, DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT, SINCE PLAINTIFF WAIVED ANY POTENTIAL CLAIMS AGAINST DEFENDANT

It is well established under Pennsylvania law that:

> A valid release is an absolute bar to recovery for everything included in the release, and it can only be set aside as any contract… in the presence of clear, precise and indubitable evidence of fraud, accidental means or incompetence of the party who is alleged to have signed it.

Simmons v. Parkette National Gymnastic Ctr., 670 F. Supp. 140, 142 (E.D. Pa. 1987) (citations omitted).

Contracts providing for immunity from liability are valid and enforceable where the intention of the parties is spelled out with particularity and their agreement shows an unequivocally expressed purpose to release from liability. Valeo v. Pocono Int'l Raceway, Inc., 500 A.2d 492, 492 (Pa. Super. 1985);

<u>Zimmer v. Mitchell</u>, 385 A.2d 437, 439 (Pa. Super. 1978).   In <u>Valeo</u>, the Pennsylvania Superior Court affirmed summary judgment based on a waiver of liability wherein the plaintiff driver "release[d], waive[d], discharge[d] and covenant[ed] not to sue" the defendant track owner "from all liability… for all loss or damage and any claim or demands therefore [sic] on account of injury to the person or property… whether caused by the negligence of Releases or otherwise while the Undersigned is in or upon [the racing surface] and/or competing… observing, working or for any purpose participating in such event." <u>Id</u>., at 492.

Moreover, where a waiver is executed regarding a voluntary recreational activity, courts applying Pennsylvania law have expressly held that it does not contravene any public policy and is not a contract of adhesion.  For example, in <u>Schillachi v. Flying Dutchman Motorcycle Club</u>, 751 F. Supp. 1169 (E.D. Pa. 1990), the Court upheld an exculpatory provision providing for the release of claims arising out of the plaintiff's participation in an ATV race in which he sustained "serious injuries" where the release agreement released liability for injuries arising from his participation in the race "from any cause whatsoever." The Court rejected the plaintiff's argument that it was a contract of adhesion and held that the "Plaintiff was under no compulsion to compete in such races.  This is not a case of one abusing a vastly superior bargaining power in its dealings with a party of disproportionately ineffective bargaining power regarding the necessities of life.

The fact that Race-Track defendants may not have allowed plaintiff to participate in this particular hobby race does not render this release a contract of adhesion." Id. at 1172-73.

A waiver is enforceable regardless of whether a party claims that she did not read or understand the agreement. In Seaton v. East Windsor Speedway, Inc., 582 A.2d 1380, 1383 (Pa. Super. 1990), the plaintiff, in opposition to the defendant's summary judgment, argued that it was a question of fact as to whether he read or understood the waiver. The plaintiff testified as follows "I signed this. I don't know what they had up here, though. I never read that, never did. All the years I've been going to the races, I never read that." Id. Further, he testified that "he was not told he was signing a release, but rather believed he was signing a signup sheet to get into the pit." Id. Despite the foregoing, the Superior Court affirmed the grant of summary judgment and explained:

> [The Plaintiff] signed the release voluntarily. He was not compelled to sign it, but rather chose to sign it in order to go into the pit. He did not depend upon working at the racetrack for his livelihood… In the absence of fraud or a relation of trust and confidence between the parties, a releasor can ordinarily not avoid the effect of a release upon the ground that at the time he signed the paper he did not read it or know its contents, but relied on what another said about it. Further, the bold-typed letters "Release and Waiver of Liability and Indemnity Agreement" at the top of the sheet quickly notify the signer that the paper is, in fact, a release.

Id.

The Waiver in the instant matter provides, in pertinent part, as follows:

> Gladis Garcia, on behalf of myself, my heirs and assigns, release and forever discharge Mountain Creek Riding Stable, Inc. D/B/A The Ranch at Pocono Manor… from any and all claims for injuries or damages (including, but not limited to, any and all equipment, artificial and/or natural conditions, and/or conditions upon these premises), and that result or are caused in any manner whatsoever including, but limited to the negligence of each releasee.

S.A. 39.

The Waiver then identifies specific issues related to horseback riding:

> I acknowledge, appreciate and understand that horseback riding is a hazardous activity; that injuries are a common and ordinary occurrence of participation in this activity… I understand that these risks include but are not limited to the following:
>
> a.      Horses regardless of temperament or training are unpredictable animals.  This may result in unexpected reactions to wild animals, other horses, people, machinery, noises, or movement, based upon instinct or fright.
>
> b.      Even well trained horses may at times fail to respond to a rider's commands, and the degree of responsiveness may vary with the strength, skill, and experience of the individual rider.
>
> …
>
> I assume the full responsibility for each of these risks including, but not limited to, the negligence of each releasee.

Id.

The language utilized in the instant Waiver is even more particular than the language employed in the release found to be enforceable in cases such as <u>Valeo</u>. Further, the activity at issue in this matter is very clearly a recreational activity. Accordingly, the Wavier is not a contract of adhesion nor barred by public policy.

It is anticipated that Plaintiff will argue that the Waiver is unenforceable because she speaks primarily Spanish and because her husband signed the Waiver for her while she changed her footwear.  However, both arguments are unavailing.

First, the law of Pennsylvania is clear.  Before entering into a contact, a person must first read the document.  <u>Hinkal v. Pardoe</u>, 133 A.3d 738, 743 (Pa. Super. 2016), <u>appeal denied</u>, 141 A.3d 481 (Pa. 2016) ("One who is about to sign a contract has a duty to read that contract first.").  The failure to read a contract before signing it is "an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract."  <u>Germantown Sav. Bank v. Talacki</u>, 657 A.2d 1285, 1289 (Pa. Super. 1995).

An agreement, such as the Waiver at issue, is enforceable despite that it is drafted in English and the plaintiff only understands Spanish.  As one District Court held, "[p]laintiff cannot argue that the release language was inconspicuous or somehow hidden from his attention.... Nor did Defendant have an obligation to verify that [p]laintiff had read and fully understood the terms of the document before he signed his name to it."  <u>Arce v. U-Pull-It Auto Parts, Inc.</u>, Civil Action

No. 06-5593, 2008 U.S. Dist. LEXIS 10202, *18 (E.D. Pa. Feb. 13, 2008) ("Although Plaintiff could not read the release himself, he could have either asked Pedro Rosado, who read both English and Spanish, to translate the writing on the sheet or inquired as to whether a Spanish-speaking employee of the junkyard was available to explain the document... Nor did Defendant have an obligation to verify that Plaintiff had read and fully understood the terms of the document before he signed his name to it."). See also Morales v. Sun Constructors, Inc., 541 F.3d 218, 222 (3d. Cir. 2008) ("In the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable.").

Second, Plaintiff's husband testified unequivocally that his wife authorized him to sign the waiver on her behalf. S.A. 44 (Transcript of Benjamin Garcia's Deposition Testimony, p. 9). As a result, Plaintiff's husband had the authority to act as her agent in doing so.

"An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel." Washburn v. N. Health Facilities, Inc., 121 A.3d 1008 (Pa. Super. 2015). "In establishing agency, one need not furnish direct proof of specific authority, provided it can be inferred from the facts that at least an implied

intention to create the relationship of principal and agent existed." Id.   Pursuant to

comment b to Restatement (Second) of Agency § 1:

> To constitute the relation, there must be an agreement, but not necessarily a contract, between the parties; if the agreement results in the factual relation between them to which are attached the legal consequences of agency, an agency exists although the parties did not call it agency and did not intend the legal consequences of the relation to follow.

Restatement (Second) of Agency § 1.

An agency relationship can be inferred from the circumstances of the case by looking at factors such as the relationship of the parties and their conduct.  Scott v. Purcell, 415 A.2d 56, 60 n. 8 (Pa. 1980); Wisler v. Manor Care of Lancaster PA, LLC, 124 A.3d 317, 323 (Pa. Super. 2015) ("[W]e look to facts to determine whether the principal expressly or impliedly intended to create an agency relationship.").

Significantly, "family ties may be relevant when considered with other factors evincing agency." Wisler, supra, at 323. "While the marital status in itself does not give rise to an agency relationship, it is competent evidence when considered with other circumstances as tending to establish that one spouse was agent for the other."   Croft v. Malli, 105 A.2d 372, 376 (Pa. 1954).   "The relationship is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may

indicate it in the case of husband and wife."    Restatement of Agency, § 22, comment (b).

Here, Plaintiff and her family arrived at Defendant's property together with their children for the purposes of engaging in a recreational activity – horseback riding.  J.C., Plaintiff's son and the person upon whom Plaintiff relied to translate, if she deemed it necessary, obtained the Waivers for them.  He communicated to Plaintiff and her husband that their signature on the paperwork was required in order to ride a horse.  Since Plaintiff was busy changing into boots, she authorized her husband to sign the document on her behalf.

The foregoing evidence and law establishes that Plaintiff allowed her husband, as her agent, to execute the release on her behalf.  Her claimed failure to review the document before allowing him to sign her name, does not provide a basis to set aside the Waiver.  Accordingly, the Waiver is enforceable and operates to preclude Plaintiff's claims as a matter of law.  Summary Judgment is warranted on this alternative basis.

## V.    **CONCLUSION**

For each and all of the foregoing reasons, Appellee, Mountain Creek Riding Stable, Inc., respectfully requests that this Court affirm the District Court's Order granting summary judgment in its favor.

Respectfully submitted,

**POST & SCHELL, P.C.**

**BY:**    /s/ Karyn Dobroskey Rienzi
          **KARYN DOBROSKEY RIENZI, ESQUIRE**
          **COUNSEL FOR APPELLEE,**
          **MOUNTAIN CREEK RIDING STABLE, INC.**

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

Pursuant to L.A.R. 28.3(d) and 46.1(e), I, Karyn Dobroskey Rienzi, certify that

I am a member of the bar of the United States Court of Appeals for the Third Circuit.


Dated: <u>November 10, 2022</u>       <u>/s/ Karyn Dobroskey Rienzi          </u>
                                        KARYN DOBROSKEY RIENZI, ESQUIRE

## CERTIFICATION OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

I hereby certify that the foregoing Brief contains 5,575 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  In preparing this certification, I relied on the word-processing system used to prepare the foregoing Brief.

The foregoing Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  November 10, 2022          /s/ Karyn Dobroskey Rienzi
                                   KARYN DOBROSKEY RIENZI, ESQUIRE

## <u>CERTIFICATION OF SERVICE</u>

I, Karyn Dobroskey Rienzi, counsel for Appellee, certify that on <u>November 10, 2022</u> the foregoing Brief was electronically filed with the Court and that seven (7) paper copies of the Brief will be filed with the Court within the time frame provided by the Court's Rules via U.S. First Class Mail, postage prepaid.

I further certify that the foregoing Brief of Appellee was served electronically, via the CM/ECF system, upon the following counsel of record, on this same date:

James W. Sutton, III, Esquire
The Law Offices of James W. Sutton, III
1014 Mill Creek Drive
Feasterville, PA 19053
(215) 364-7900
Counsel for Appellant

Dated: <u>November 10, 2022</u>    /s/ Karyn Dobroskey Rienzi
                                                 KARYN DOBROSKEY RIENZI, ESQUIRE

## <u>CERTIFICATION OF IDENTICAL BRIEFS</u>

Pursuant to Third Circuit Local Rule 31.1(c), it is hereby certified that the text of this electronically filed Brief and the text of the "hard" copies of the Brief filed with the Court and served on the Appellant are identical.


Dated: <u>November 10, 2022</u>        /s/ Karyn Dobroskey Rienzi
                                       KARYN DOBROSKEY RIENZI, ESQ.

## <u>CERTIFICATION OF VIRUS CHECK</u>

I hereby certify that the foregoing Brief of Appellee was scanned for viruses by Carbon Black Cloud, version 3.8.0.722, on <u>November 10, 2022</u>, and no viruses were detected.


Dated: <u>November 10, 2022</u>          /s/ Karyn Dobroskey Rienzi
                                        KARYN DOBROSKEY RIENZI, ESQ.